**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JANE DOE,**<br><br>*Plaintiff*,<br><br>v.<br><br>**THE FRATERNITY OF ALPHA KAPPA LAMBDA GAMMA PI CHAPTER and THE FRATERNITY OF ALPHA KAPPA LAMBDA,**<br><br>*Defendants.* | **CIVIL ACTION NO. 24-1812** |

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. This action arises from a series of egregious acts and omissions committed by the Defendant The Fraternity of Alpha Kappa Lambda, Inc. ("AKL National Fraternity") and the Gamma Pi Chapter of The Alpha Kappa Lambda Fraternity at the University of Connecticut ("AKL Local Chapter" or "AKL"). Jane Doe, a college student at the time of the events described herein, attended a gathering hosted by Defendants, during which she was subjected to a violent sexual assault by a member of the AKL Local Chapter. Defendants then engaged in deliberate efforts to protect their reputation at the expense of Plaintiff's safety and well-being.

2. The assault occurred in an environment created by Defendants' reckless disregard for the safety of young women who entered the AKL fraternity house. Defendants failed to enforce their own risk management policies, ignored foreseeable risks associated with alcohol use and sexual violence at fraternity gatherings and events, and allowed unsafe and dangerous

conditions to persist on their premises. Following the assault, Defendants engaged in a coordinated effort to silence Plaintiff and protect the reputation of the fraternity, further compounding Plaintiff's trauma and violating their duty to act responsibly and with reasonable care.

3. Defendants' actions and omissions constitute Aiding and Abetting Tortious Conduct (AKL Local Chapter) ("Count One"); Intentional Infliction of Emotional Distress (AKL Local Chapter) ("Count Two"); Premises Liability (Both Defendants) ("Count Three"); Negligence (Both Defendants) ("Count Four"); Negligent Infliction of Emotional Distress (Both Defendants) ("Count Five"); Intentional False Imprisonment (Local Chapter) ("Count Six") and Non-Intentional False Imprisonment (Local Chapter)("Count Seven").

4. Through this action, Plaintiff seeks to hold Defendants accountable for the severe emotional, psychological, and physical harm caused by their conduct and to ensure that such reckless indifference to safety and human dignity is not tolerated in any fraternity or institution.

5. The Plaintiff demands a jury trial on all claims so triable.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the institutional defendants can be found and transact business in this judicial district and/or a substantial part of the events or omissions by all defendants giving rise to this action occurred in this judicial district.

## III. PARTIES

8. At all times relevant herein the Plaintiff, Jane Doe ("Plaintiff"), was a resident of the State of Connecticut, and a student enrolled and residing at the University of Connecticut.

9. Defendant, The Fraternity of Alpha Kappa Lambda, is a Foreign Nonprofit Corporation registered as a 501(c)(7) Tax-Exempt Organization domiciled in the State of Indiana, with a principal place of business at 354 Gradle Drive, Carmel, Indiana.

10. Defendant, The Fraternity of Alpha Kappa Lambda Gamma Pi Chapter, is a Voluntary Association operating within the State of Connecticut, with a principal place of business at Building B2, Laurel Way, Husky Village, Storrs, Connecticut.

## IV. STATEMENT OF FACTS

11. At all times relevant herein, the AKL Local Chapter and AKL National Fraternity, by and though their agents, servants, and/or employees were entered into a housing agreement with the University of Connecticut known as the "Husky Village Contract." The "Husky Village Contract," conveyed to the Local Chapter and National Fraternity the rights to reside in and utilize the property known as Building B2, 25 Laurel Way, Husky Village, Storrs, Connecticut.

12. At all times relevant the "Husky Village Contract," was signed by the President of the Local Chapter, acknowledging that the Local Chapter was "duly authorized to enter into this contract and agree to ensure the members of our Chapter and guests are aware of, and shall abide by, this Contract."

13. At all times relevant the "Husky Village Contract," was signed by the Alumni/ae Board or Housing Corporation President, or another agent and/or employee of the National Fraternity, acknowledging that the agent of the National Fraternity was "duly authorized to enter into this contract," by the National Fraternity, and further acknowledging, "[t]o the best of my

knowledge, the officers [of the Local Chapter] understand their responsibilities as outlined in the Contract."

14. At all times relevant, the Local Chapter and National Fraternity, in entering into the "Husky Village Contract," acknowledged and affirmed the obligation to comply with Federal, State and local law, as well as the obligation to observe "the Student Code" and all other policies of the University of Connecticut.

15. At all times relevant, the National Fraternity required that all members of the Local Chapter pay "national dues" in order retain status as an "active member."

### A. *The National Fraternity took an Active Role in the Supervision, Management and/or Control of the Local Chapter, and was Involved in All Levels of the Operation of the Local Chapter*

16. At the time that Jane Doe was raped, the AKL Defendants knew the dangers of sexual misconduct and the misuse of alcohol within fraternity houses.

17. At all times relevant, the AKL National Fraternity exerted control over the bylaws of the AKL Local Chapter, such that "whenever conflict arises" between the bylaws of the Local Chapter and the Constitution of the AKL National Fraternity, the Constitution of the AKL National Fraternity "shall be supreme."

18. At all times relevant, the AKL National Fraternity provided to the ALK Local Chapter "Chapter Services," including "regular staff visits, publications and resources, oversight and guidance."

19. At all times relevant, the AKL National Fraternity provided to the AKL Local Chapter "Risk Management Services," through a "risk management program for [the AKL National Fraternity's] member chapters to enable them to maximize the use of property and resources."

20. At all times relevant the President of the AKL Local Chapter was mandated to be in weekly contact with the AKL National Fraternity through the "National Headquarters, the Corporation Board, and the Chapter Advisor(s)." The President of the AKL Local Chapter was then mandated to serve as liaison of information between the members of the AKL Local Chapter and the AKL National Fraternity.

21. At all times relevant the AKL National Fraternity maintained Health and Safety Guidelines and Policies that applied to all levels of membership in the organization, including members of the AKL Local Chapter.

22. According to the AKL National Fraternity Health and Safety Guidelines and Policies, the policies "are to be followed in any activity sponsored or endorsed by the chapter or at any event that a reasonable, objective observer would associate with the organization, including those that occur on or off a chapter premises."

23. Paragraph Seven to the Use of Alcohol and Drugs Policy of the AKL National Fraternity Health and Safety Guidelines and Policies provides that "[a]ttendance by non-members at any event where alcohol is present must be by invitation only, and the chapter must utilize a guest list system."

24. The AKL National Fraternity Health and Safety Guidelines and policies further provides that "[e]ach chapter, under the leadership of the Chapter President and Fraternity Educator will be required to include alcohol awareness as part of the Fraternity Education program." Further, "Alpha Kappa Lambda will continue to educate undergraduate and alumni brothers in the responsible use of alcohol through Conclaves, chapter visitations and other such support programs."

25. The Sexual Abuse and Harassment Policy of the AKL National Fraternity Health and Safety Guidelines provides that, "[t]he Fraternity of Alpha Kappa Lambda will not tolerate nor condone any form of sexually abusive behavior on the part of its members, whether physical, mental, or emotional." Further, "[t]he Fraternity of Alpha Kappa Lambda encourages educational programming involving social and communication skills, interpersonal relationships, sexual abuse awareness, etiquette, and sex-role expectations."

26. The AKL National Fraternity Health and Safety Guidelines must be reviewed by the Local Chapter "at least once a semester." Further, "[i]t is highly recommended they be reviewed at the start of each semester and again before any social event."

27. The AKL National Fraternity requires that all chapters, including the AKL Local Chapter, confirm and document this required review with the National Fraternity.

28. As made evident by the AKL National Fraternity Health and Safety Guidelines and Policies, and the reporting requirements thereof, both the AKL National Fraternity and AKL Local Chapter are acutely aware of the dangers of alcohol and sexual abuse within the fraternity setting.

29. The AKL Local Chapter failed to comply with some or all of these policies.

30. The AKL National Fraternity failed to enforce some or all of these policies.

***B. Defendants' Failure to Enforce Policies Created an Unsafe Environment Wherein Jane Doe was Rendered Vulnerable and Fell Asleep in Student A's Room at the AKL Fraternity House after being Encouraged to Consume Alcohol. Jane Doe was then Raped by Student A after he Continued to Consume Alcohol, Returning After Becoming Sexually Aggressive and Violent.***

31. The individual referred to herein as "Student A," was at all times relevant a member of the AKL Local Chapter, who paid dues to the AKL National Fraternity.

32. The individual referred to herein as "Student B," was at all times relevant a female student who attended the University of Connecticut. Student B lived in the same dorm as Jane Doe.

33. The individual referred to herein as "Student C," was at all times relevant a member in the AKL Local Chapter, who paid dues to the AKL National Fraternity. Student C was Student A's fraternity brother and roommate.

34. The individual referred to herein as "Student D," was at all times relevant Jane Doe's friend and ex-boyfriend, and a fellow student at the University of Connecticut. Student D was not a fraternity brother at the AKL Local Chapter.

35. The individual referred to herein as "Student E," was at all times relevant a female student who attended the University of Connecticut, and Jane Doe's friend and roommate.

36. On Thursday, November 17, 2022, Student A arranged for a driver to pick up Jane Doe and Student B from their dorm to go to the AKL Fraternity House, located at Building B2, 25 Laurel Way, Husky Village, Storrs, Connecticut for "pre-gaming," or drinking before going out, in advance of going to a bar called the Pourhouse.

37. Jane Doe had a "Buzzballz" at AKL, and 1-2 shots before leaving to go to the bar. Student A arranged for pledges of the AKL Local Chapter to drive them to the Pourhouse.

38. The group arrived at the Pourhouse around 9:45pm or 10pm. At the Pourhouse, Student A purchased 2 Vodka Redbulls for Jane Doe.

39. After some time at the Pourhouse, Student A began pressuring Jane Doe and Student B to return to the AKL Fraternity House, and he began rushing the group to leave. Student B, a fellow student who lived in Jane Doe's dorm, wanted to meet up with Student A's

fraternity brother and roommate at AKL, Student C. Jane Doe did not want to leave Student B alone, as a female student at a fraternity house, so she agreed to return to AKL. The group left the Pourhouse and took an Uber back to AKL.

40. Upon returning to AKL from the Pourhouse, Jane Doe and Student A went to Student A's room, and Student B left the room to meet up with Student C. It is unclear if she returned to Student A's room, and if she returned, when she returned.

41. Members of AKL knew and/or should have known that Jane Doe was present at the AKL Fraternity House, and had consumed alcohol, rendering her vulnerable to sexual assault.

42. Student A attempted to initiate sex with Jane Doe, but was rebuffed when she told him "No," and that she was tired and wanted to go to sleep.

43. Student A provided Jane Doe with a change of clothes (a sweatshirt). He then left the room. Student A continued to drink and party with his fraternity brothers.

44. Jane Doe had changed her clothes, and eventually fell asleep by herself on a futon in Student A's room. Other AKL fraternity brothers who were awake and in proximity to Student A's room, drinking and partying.

45. Jane Doe was asleep on the futon when Student A returned to the room, more intoxicated and sexually aggressive.

46. At around 1:00 a.m. on Friday, November 18, 2022, Jane Doe was violently awakened by Student A who was on top of her from behind as he forced his penis inside of her.

47. Jane Doe was groggy from consuming alcohol and said, "what are you doing get off me." She told him, "No" and "Stop." Student A covered her mouth, and she was unable to get away from him. Student A ejaculated on the futon at some point during the rape.

48. Jane Doe eventually broke free from Student A and ran from the room, grabbing her phone on the way out. She ran to the bathroom on the same floor as Student A's room and went into a stall. The force and the friction of the rape was sharp and excruciating and had caused Jane Doe to bleed.

49. Jane Doe had an uncontrollable emotional response and had a panic attack in the bathroom. She was confused and disoriented, and she couldn't stop crying—sometimes hysterically crying.

50. By this time, other AKL Local Chapter fraternity brothers were aware that something had happened, and that Jane Doe was severely distraught.

51. At 1:09 a.m. on Friday, November 18, 2022, while Jane Doe was in the bathroom, she texted and called her friend and ex-boyfriend, Student D. She spoke on the phone with him. She had dated Student D for several years, and he also attended UConn. She told him that she needed help, that she had been raped, and she was having vaginal bleeding due to the rape.

52. While Jane Doe was in the bathroom, Student B came into the bathroom and briefly spoke to Jane Doe. Jane Doe told her what Student A had done to her. Student B then saw Student A who was talking to his fraternity brothers in the hallway.

53. Jane Doe left the restroom and went into the side stairwell at AKL. She became locked in the stairwell.

54. Student D arrived at AKL at around 1:24 a.m. on Friday, November 18, 2022, to help Jane Doe safely leave the AKL Fraternity House.

55. AKL Local Chapter fraternity brothers, who were by this time aware of the assault, refused to allow Student D into the house to get Jane Doe.

56. Instead, the members of the AKL Local Chapter threatened Student D with physical violence and verbally attacked him in an effort to prevent Student D from assisting and/or advocating for Jane Doe, and from safely removing her from the Fraternity House.

57. Student D told them that he didn't want any trouble, but that he needed to get Jane Doe. At some point, Student A also went downstairs and outside where Student D was trying to gain entry to get Jane Doe. Student A discussed with fraternity brothers that Jane Doe stated that he raped her.

58. After several minutes of intimidation and threats of physical violence, Jane Doe's roommate, Student E, was able to make entry into the AKL Fraternity House, while Student D remained outside facing continuing threats by the AKL Local Chapter fraternity brothers.

59. Jane Doe heard these interactions while she was in the stairwell. At 1:47 a.m., on Friday, November 18, 2022, Jane Doe was still locked in the stairwell inside the fraternity house, desperate to get out. Student E, Jane Doe's roommate found her, and she and another friend had to physically assist Jane Doe out of AKL because, as Student D described, she was "sobbing and bawling her eyes out" and had difficulty walking.

60. One of the AKL Local Chapters fraternity brothers gave Student D his name and phone number, after aggressively threatening him. The AKL Local Chapter fraternity brother attempted to intimidate Student D not to contact authorities, telling him that if he had a problem, he should contact him. This is consistent with a practice at AKL and other fraternities that will throw a party and request people contact fraternity members if there is an issue, rather than contact any figures in authority.

61. Shortly after Jane Doe left the AKL Fraternity House, a fire alarm was triggered by the AKL Local Chapter, and all the fraternity brothers gathered outside the AKL Fraternity House.

62. The Fire Department responded to the alarm, but no member of the AKL Local Chapter reported the assault to either the responding fire department or the police.

63. The next morning, at or around 9:00 a.m. on Friday, November 18, 2022, the AKL Local Chapter fraternity brothers received a group chat from the AKL Local Chapter House Manager, who was also a fraternity brother, that he had scheduled a meeting for the fraternity brothers at 1:00 p.m. that day.

64. Student A and his fraternity brother and roommate, Student C, contacted Student B, the female student who was at the AKL Fraternity House with Jane Doe at the time she was raped. The purpose of the call was to "debrief" about the night before. The two AKL Local Chapter fraternity brothers used Student B to coerce Jane Doe to speak with Student A. Student B repeatedly pressured Jane Doe to speak with Student A. Student B then took Jane Doe's phone and called Student A while Jane Doe was in her room, at approximately 1:09 p.m. on Friday, November 18, 2022. While on the phone, Jane Doe reiterated to Student A that he did not have her consent for intercourse the night prior.

65. That same day, Jane Doe reported the rape to her mother. Jane Doe's mother took Jane Doe to the hospital that night at approximately 11:33 p.m., Friday, November 18, 2022, for an examination, including a rape kit. Over twenty-four hours later, Jane Doe was still experiencing vaginal pain and bleeding from the rape.

66. A SANE examination by a sexual assault nurse examiner at 3:21 a.m. on Saturday November 19, 2022, confirmed that there were fissures at Jane Doe's introitus, (which means

there were cuts in the opening to her vagina) and abraded tissue, (which refers to scraping away of the tissue because of applied friction force.) The nurse confirmed that her findings were consistent with a violent sexual assault.

67. At 9:36 a.m. on November 19, 2022, Student A texted Jane Doe and apologized for "fucking up what we had going on, but im [sic] most sorry for hurting someone I care so much about . . ."

68. Following that text, Student A "learned from a friend" that Jane Doe may have reported the incident to the University. He texted her again at 2:49 p.m., attempting to reframe the events of the evening, as follows:

> don't understand why after having hooked up with me several times drunk and sober that this is an issue now. the fact that you had sex with me soon before, got in bed with me while i was drunk and then had your ex boyfriend come and accuse me of doing things that i didn't happen [sic] says something. i don't know if you are trying to use me as some way to get back with him but this is not okay. i felt terrible that you were crying and upset all of yesterday that's what i apologized for. your regret for having a relationship with me is not an excuse to destroy my name and character. not one girl has ever had a problem with me and if ur capable of going to these lengths to avoid responsibility shows your not the girl i thought you were.

69. Student A and some of his AKL Local Chapter fraternity brothers thereafter engaged in a pattern of threats and intimidation, as well as efforts to align false reports about the events leading to Student A's rape of Jane Doe on November 18, 2022.

70. Despite knowledge of the rape, the AKL Local Chapter, acting under its own self-governance policies and motivated by self-interest, engaged in efforts to self-police its own behavior.

71. This included deploying a "crisis management plan" they created, which prioritized protecting both the AKL Fraternity and Student A, over ensuring the safety of Jane Doe.

72. This self-directed approach allowed the AKL Local Chapter to place the interests of the AKL National Fraternity and the AKL Local Chapter above the well-being of Jane Doe, ultimately leading to, and then exacerbating, the harm to Jane Doe.

**COUNT ONE**
**AIDING AND ABETTING A TORT**
**(AKL LOCAL CHAPTER)**

73. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 65.

74. At all times relevant herein, the AKL Local Chapter, by and through its members, including Student A, Student C, and other fraternity brothers, were acting within the course and scope of their membership and affiliation with the AKL Local Chapter.

75. On or about November 18, 2022, the AKL Local Chapter, through its members, became aware that Jane Doe had been subjected to a violent sexual assault perpetrated by Student A, a fraternity brother in the AKL Local Chapter.

76. Despite this knowledge, the AKL Local Chapter, acting through its members, affirmatively engaged in actions that supported, facilitated, or concealed the tortious conduct of Student A, including but not limited to:

a. Providing alcohol to Student A, which caused him to become intoxicated and sexually aggressive, before he returned to his room where Jane Doe was asleep.

b. Allowing Student A unsupervised access to Jane Doe, while she was asleep, when they knew and/or should have known that Student A was intoxicated and aggressive.

c. Threatening and intimidating Jane Doe and others, including Student D, who attempted to ensure her safety and remove her from the AKL Fraternity House in the immediate aftermath of the assault.

d. Causing Jane Doe to remain locked in the stairwell at the AKL Fraternity House, and refusing to allow Jane Doe and Student D safe and prompt exit from the premises.

e. Employing a "crisis management plan" designed to prioritize the interests of the AKL Local Chapter and protect Student A from accountability over ensuring Jane Doe's safety and well-being.

f. Failing to report the sexual assault to law enforcement or appropriate authorities, and otherwise assisting Student A in the commission of tortious acts in violation of the "Husky Village Contract" and university policies.

g. Attempting to coerce Jane Doe through intermediaries to engage in conversations with Student A, and coercing her to believe that the incident was not rape, thereby exacerbating her emotional distress.

77. The AKL Local Chapter, through its actions and omissions, knowingly provided substantial assistance to Student A in the commission of tortious acts.

78. The AKL Local Chapter knew or should have known that its actions and omissions would contribute to and compound the harm inflicted upon Jane Doe.

79. As a direct and proximate result of the AKL Local Chapter's aiding and abetting of Student A's tortious acts, Jane Doe has suffered and continues to suffer severe emotional distress, physical injury, mental anguish, humiliation, and other damages.

## COUNT TWO
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AKL LOCAL CHAPTER)

80. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 79.

81. At all times relevant herein, members of the AKL Local Chapter were acting within the course and scope of their membership and affiliation with the Local Chapter.

82. The Local Chapter, through its members, engaged in extreme and outrageous conduct that was intended to or should have been expected to cause severe emotional distress to Jane Doe, including but not limited to:

a. Providing alcohol to Student A, which caused him to become intoxicated and sexually aggressive, before he returned to his room where Jane Doe was asleep.

b. Allowing Student A unsupervised access to Jane Doe, while she was asleep, when they knew and/or should have known that Student A was intoxicated and aggressive.

c. Threatening and intimidating Jane Doe and others, including Student D, who attempted to ensure her safety and remove her from the AKL Fraternity House in the immediate aftermath of the assault.

d. Causing Jane Doe to remain locked in the stairwell at the AKL Fraternity House, and refusing to allow Jane Doe and Student D safe and prompt exit from the premises.

e. Employing a "crisis management plan" designed to prioritize the interests of the AKL Local Chapter and protect Student A from accountability over ensuring Jane Doe's safety and well-being.

f. Failing to report the sexual assault to law enforcement or appropriate authorities, and otherwise assisting Student A in the commission of tortious acts in violation of the "Husky Village Contract" and university policies.

g. Attempting to coerce Jane Doe through intermediaries to engage in conversations with Student A, and coercing her to believe that the incident was not rape, thereby exacerbating her emotional distress.

h. Refusing to report the assault to the appropriate authorities, even though the Local Chapter was aware that Plaintiff was experiencing severe emotional and physical trauma as a result of the assault.

i. Coercing Jane Doe, through intermediaries, to speak with Student A after the assault, thereby inflicting additional emotional harm and distress on her.

83. The AKL Local Chapter's conduct, as described above, was extreme and outrageous and went beyond all bounds of decency tolerated in a civilized society.

84. The AKL Local Chapter acted with the intent to cause, or with reckless disregard of the substantial probability of causing, severe emotional distress to Jane Doe.

85. As a direct and proximate result of the AKL Local Chapter's conduct, Jane Doe has suffered and continues to suffer severe emotional distress, including but not limited to feelings of humiliation, anxiety, mental anguish, emotional trauma, and physical manifestations of distress.

**COUNT THREE**
**PREMISE LIABILITY**
**(BOTH DEFENDANTS)**

86. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 85.

87. At all times relevant herein, Defendants, The Fraternity of Alpha Kappa Lambda Gamma Pi Chapter ("Local Chapter") and The Fraternity of Alpha Kappa Lambda ("National Fraternity"), had control over the premises located at Building B2, 25 Laurel Way, Husky Village, Storrs, Connecticut ("AKL"), either directly or through their agents, officers, and members.

88. Defendants, by and through the "Husky Village Contract," assumed a duty to exercise reasonable care in maintaining the safety of the AKL Fraternity House and ensuring that it was a safe environment for all persons lawfully present on the premises, including Jane Doe.

89. At all times relevant herein, Defendants knew or should have known that fraternity gatherings involving alcohol could present a foreseeable risk of harm, particularly when such gatherings involved non-members, such as Jane Doe.

90. Defendants, through their agents, servants, and employees, breached their duty to Jane Doe by failing to maintain a safe environment at the AKL Fraternity House. The Defendants' acts and omissions that constitute breaches of their duty include, but are not limited to:

a. Failing to properly monitor or control the use of alcohol on the premises, despite having policies and guidelines that expressly address alcohol consumption and guest safety;

b. Failing to provide adequate security or supervision at the AKL House, particularly during fraternity events that involved alcohol and were likely to present risks of harm;

c. Failing to intervene, report, or take reasonable action to assist Plaintiff after learning of her visibly distressed and injured condition on the premises;

d. Employing a "crisis management plan" that prioritized Defendants' reputational interests over Plaintiff's safety, exacerbating the harm caused to Plaintiff while she was still on the premises;

e. Allowing an environment that fostered intimidation, threats, and unsafe conditions by failing to promptly escort Plaintiff off the premises or provide her with support after the assault.

91. Defendants' breaches of their duty to maintain a safe premises for Plaintiff were the direct and proximate cause of Plaintiff's injuries. As a result of these breaches, Plaintiff suffered significant physical and emotional injuries, including but not limited to severe emotional distress, mental anguish, and physical harm.

92. Defendants had actual or constructive notice of the dangerous and unsafe conditions on the premises based on:

a. Prior incidents and knowledge of the risks associated with alcohol consumption at fraternity events;

b. The National Fraternity's health and safety guidelines, which reflect its awareness of the potential for harm in such environments;

c. Defendants' direct observation of Plaintiff's physical and emotional distress on the night of the incident.

93. As a direct and proximate result of Defendants' failure to fulfill their duty of care, Plaintiff has suffered and continues to suffer substantial physical injuries, emotional trauma, mental anguish, humiliation, and other damages.

**COUNT FOUR**
**NEGLIGENCE**
**(BOTH DEFENDANTS)**

94. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 86.

95. At all times relevant herein, Defendants, The Fraternity of Alpha Kappa Lambda Gamma Pi Chapter ("Local Chapter") and The Fraternity of Alpha Kappa Lambda ("National Fraternity"), owed Plaintiff a duty of reasonable care to ensure her safety while she was lawfully present on the premises at Building B2, 25 Laurel Way, Husky Village, Storrs, Connecticut ("AKL").

96. Defendants owed this duty of care by virtue of their control over the AKL House, their obligations under the "Husky Village Contract," and their roles in organizing and overseeing events on the premises where guests, including Plaintiff, were invited.

97. Defendants knew or should have known of the inherent risks associated with hosting events involving alcohol, particularly when such events included non-member guests, and were therefore obligated to take reasonable steps to mitigate these risks and protect individuals like Plaintiff from foreseeable harm.

98. Defendants breached their duty of reasonable care to Plaintiff by engaging in the following negligent acts and omissions:

a. Failing to implement and enforce reasonable measures to monitor or control the consumption of alcohol on the premises, particularly with respect to non-member guests;

b. Failing to enforce the National Fraternity's health and safety policies, including its alcohol use and sexual sexual abuse policies, which were specifically designed to prevent harm to individuals on the premises;

c. Failing to provide adequate supervision or security at the AKL House during events where alcohol was served, despite knowing the likelihood of unsafe conditions;

d. Permitting members of the Local Chapter, including Student A, to act in a manner that created an unreasonable risk of harm to Plaintiff;

e. Failing to respond appropriately to Plaintiff's visibly distressed and injured condition following the assault, including by failing to provide assistance, notify authorities, or take reasonable steps to ensure her safety;

f. Employing a "crisis management plan" that prioritized protecting Defendants' reputations over addressing the harm to Plaintiff, thereby compounding the risk of further injury and distress;

g. Allowing the environment at AKL to devolve into one that fostered intimidation, threats, and unsafe conditions, which directly contributed to the harm suffered by Plaintiff.

99. Defendants' breaches of their duty of care were the direct and proximate cause of Plaintiff's injuries, including but not limited to the following:

a. Physical injuries sustained as a result of the sexual assault;

b. Emotional trauma, mental anguish, and severe distress resulting from Defendants' negligent actions and omissions;

c. Ongoing psychological and physical harm that could have been mitigated had Defendants fulfilled their duty of care.

100. Defendants had actual or constructive notice of the risks and unsafe conditions posed by their negligent conduct, as evidenced by:

a. Their awareness of the dangers associated with hosting events involving alcohol, particularly when non-member guests were present;

b. The National Fraternity's health and safety guidelines, which highlight the importance of guest safety and responsible alcohol use;

c. Defendants' observations of Plaintiff's condition on the night of the assault and their failure to take reasonable action to assist her or address the situation.

101. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer substantial physical, emotional, and psychological injuries, as well as other damages.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (BOTH DEFENDANTS)

102. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 94.

103. At all times relevant herein, Defendants, The Fraternity of Alpha Kappa Lambda Gamma Pi Chapter ("Local Chapter") and The Fraternity of Alpha Kappa Lambda ("National Fraternity"), owed Plaintiff a duty to act with reasonable care to avoid causing her emotional distress.

104. Defendants knew or should have known that hosting an event involving alcohol on their premises, inviting non-member guests, and failing to provide adequate oversight and security could create an unreasonable risk of harm and emotional distress to those present, including Plaintiff.

105. Defendants, through their agents, officers, and members, breached this duty of care to Plaintiff by engaging in negligent acts and omissions, including but not limited to:

a. Failing to monitor and control alcohol consumption by individuals on the premises, despite awareness of the risks associated with alcohol-fueled fraternity events;

b. Failing to enforce or abide by the National Fraternity's health and safety guidelines which were designed to mitigate the risk of harm.

c. Failing to provide adequate security, supervision, or intervention to protect guests from foreseeable harm, including Plaintiff, and failing to assist her following the assault;

d. Allowing an environment of intimidation and hostility toward Plaintiff after the assault, including threats directed toward her friend, Student D, and actions taken to prevent him from aiding her, despite Plaintiff's visibly distressed state;

e. Failing to report the assault or seek assistance from authorities or emergency responders, thereby compounding Plaintiff's emotional distress in the aftermath of the incident;

f. Employing a "crisis management plan" that prioritized Defendants' reputational interests over Plaintiff's well-being, which exacerbated Plaintiff's emotional distress by creating a hostile environment and preventing her from accessing help.

106. Defendants' conduct was unreasonable under the circumstances and created an environment that Defendants knew or should have known would cause Plaintiff significant emotional distress.

107. As a direct and proximate result of Defendants' negligent actions and omissions, Plaintiff suffered and continues to suffer severe emotional distress, including but not limited to anxiety, mental anguish, humiliation, trauma, and other emotional and psychological harms.

Plaintiff's emotional distress was foreseeable to Defendants, given the nature of their conduct and the circumstances under which Plaintiff's distress arose, particularly in light of their knowledge of the risks associated with unsupervised, alcohol-related events on the premises and their knowledge of Plaintiff's distress following the assault.

**COUNT SIX**
**INTENTIONAL FALSE IMPRISONMENT**
**(AKL LOCAL CHAPTER)**

108. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 107 of the Complaint.

109. At all times relevant herein, members of the AKL Local Chapter were acting within the course and scope of their membership and affiliation with the AKL Local Chapter.

110. On or about November 18, 2022, following the sexual assault of Jane Doe, the Local Chapter, through its members, unlawfully restrained the physical liberty of Jane Doe by:

a. Refusing to allow her to safely and promptly exit the premises of the AKL Local Chapter fraternity house, despite her visibly distressed and injured condition;

b. Threatening and intimidating Jane Doe's friend, Student D, who came to assist her, thereby obstructing his ability to help her leave the premises.

111. The AKL Local Chapter, through its members, engaged in the aforementioned actions with the intent to impose confinement on Jane Doe or with the knowledge that such confinement was the substantially certain result of their conduct.

112. The restraint of Jane Doe's liberty was against her will and without her consent.

113. The AKL Local Chapter's intentional unlawful restraint of Jane Doe's liberty caused her to suffer significant physical, emotional, and psychological harm, including but not limited to:

a. Severe emotional distress, anxiety, and mental anguish resulting from being trapped in the same environment as her assailant;

b. Continued emotional trauma due to the delay in accessing assistance and leaving the premises;

c. Ongoing psychological injuries exacerbated by the Local Chapter's actions during and after the incident.

114. As a direct and proximate result of the Local Chapter's intentional false imprisonment, Jane Doe has suffered and continues to suffer damages.

**COUNT SEVEN**
**NON-INTENTIONAL FALSE IMPRISONMENT**
**(AKL LOCAL CHAPTER)**

115. Plaintiff incorporates by reference into this count each and every allegation contained in paragraphs 1 through 114 of the Complaint.

116. At all times relevant herein, members of the AKL Local Chapter were acting within the course and scope of their membership and affiliation with the AKL Local Chapter.

117. On or about November 18, 2022, following the sexual assault of Jane Doe, the Local Chapter, through its members, unlawfully restrained the physical liberty of Jane Doe by:

a. Allowing Jane Doe to become locked in a stairwell within the fraternity house, thereby preventing her from leaving.

118. The Local Chapter, through its members, failed to exercise reasonable care in preventing Jane Doe's restraint and confinement, which was a foreseeable consequence of their negligent conduct.

119. The restraint of Jane Doe's liberty was against her will and without her consent.

120. The Local Chapter's negligent unlawful restraint of Jane Doe's liberty caused her to suffer significant physical, emotional, and psychological harm, including but not limited to:

a. Severe emotional distress, anxiety, and mental anguish resulting from being trapped in the same environment as her assailant;
b. Continued emotional trauma due to the delay in accessing assistance and leaving the premises;
c. Ongoing psychological injuries exacerbated by the Local Chapter's actions during and after the incident.

121. As a direct and proximate result of the Local Chapter's negligent false imprisonment, Jane Doe has suffered and continues to suffer damages.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully prays that this Court take jurisdiction over this case and grant judgment against the Defendants. Plaintiff prays that the following relief be awarded:

1. compensatory damages to Plaintiff in an amount to be determined at trial, for the physical, emotional, and psychological injuries she has suffered and continues to suffer as a result of Defendants' conduct;

2. punitive damages to Plaintiff in amount to be proven at trial;

3. reasonable costs and attorney's fees incurred in bringing this action, to the extent permitted by law;

4. grant such other and further relief as this Court deems just, equitable, and appropriate.

**RESPECTFULLY SUBMITTED,**

**THE PLAINTIFF,**
**JANE DOE**

BY:__________________________

Elizabeth K. Adams, ct26259
The Adams Law Firm, P.C.
41B New London Turnpike, Suite 7C
Glastonbury, CT 06033
Phone: 860-724-1300 Fax: 860-724-1302
Juris No.: 422406
Email: eadams@ekadamslaw.com

**Please enter my appearance on behalf of the Plaintiff.**

**<u>JURY TRIAL DEMAND</u>**

Plaintiff hereby demands a trial by jury with respect to each of the claims alleged herein, to the fullest extent permitted by law.

**RESPECTFULLY SUBMITTED,**

**THE PLAINTIFF,**
**JANE DOE**

BY:_________________________

Elizabeth K. Adams, ct26259
The Adams Law Firm, P.C.
41B New London Turnpike, Suite 7C
Glastonbury, CT 06033
Phone: 860-724-1300 Fax: 860-724-1302
Juris No.: 422406
Email: eadams@ekadamslaw.com